CLEVE BARNES v. THE STATE.

No. 18357. Delivered June 17, 1936.

The opinion states the case.

*L. H. Welch,* of Breckenridge, *Frank Judkins,* of Eastland, and *Roy Scott,* of Fort Worth, for appellant.

*Ben J. Dean,* District Attorney, of Breckenridge, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is assault with intent to murder; the punishment, confinement in the penitentiary for two years.

On the night of the 27th of August, 1935, officers stationed themselves near a vacant house belonging to Rayford McNabb and W. P. McLean. In a few minutes appellant and Jake Lemley came to the house. The officers testified that as they approached they heard "the sound of tin cans striking together." Appellant remained in the yard while Lemley entered the house. After entering the house Lemley struck a match. He later went back into the yard and conversed with appellant. He then re-entered the house. At this juncture we quote from the testimony of one of the officers: "He went back across the porch, and when he went into the house this second time, I saw a flash and an explosion; the man went on the porch, and I could hear his footsteps where he stepped on the porch. * * * After the flash, the man that was there on the porch ran off the porch to where the defendant was; they tried to run towards the gate, the east gate, the direction from which they had come." It appears that appellant was armed with a shotgun. The testimony of the officers was to the effect that when appellant and his companion ran one of the officers opened fire on them. Again, they testified that appellant returned the fire. The alleged injury party, W. R. Clepper, testified, in part, as follows: "When the lights flashed I told the officers 'Let's go,' and Mr. Hickey and I jumped up and started in a run and hollered and I hollered 'Halt; it's the law.' They both stopped about the time we hollered. I just figured they had stopped to give up, and I was carrying my gun in front of

me, and I dropped the gun down, and just about the time it got straight down Cleve Barnes shot at me—I did not at the time see what it was that he shot with, but it was a shotgun. I saw the flash of the gun * * * I had not fired at that time; when he fired I fired just as quick as I could raise the gun. I started to shoot him in the belly but thought better of it and dropped the gun down to break a leg. He fell down and in about a second he said 'Don't shoot any more.' "

This witness also testified that Ray Hickey, one of the officers, fired the first shot. He said: "Ray Hickey fired the first shot that night after the men broke to leave. I suppose we were ten or twelve feet apart when he fired that shot. I do not think he said anything after he fired. He hollered 'Halt' and fired at the same time. After he fired, others fired pretty quick. Cleve Barnes and Lemley fired the second shot. I could not tell who fired the third and fourth. There was quite a rapid firing for a few seconds. Yes, Mr. Hickey fired first."

The house was completely destroyed by fire.

In addition to charging on assault with intent to murder, the court instructed the jury on the law of arson, and charged them as follows:

"Now, therefore, you are instructed that if you believe from the evidence, beyond a reasonable doubt, that at the time of the alleged assault the defendant, Cleve Barnes, acting either alone or with J. S. Lemley, had committed the offense of arson and was fleeing from the scene of the offense, then the officers making the arrest would have the right to do so without a warrant and were justified in adopting all the reasonable measures necessary to effect such an arrest."

Nowhere in the charge did the court instruct the jury on the law of self-defense. Exception was taken to the omission If appellant had not committed the offense of arson the officers had no right to fire upon him and he had the right to defend himself. See Art. 1222, P. C. The court should have given an instruction covering appellant's right to defend himself in the event the jury entertained a reasonable doubt as to whether he had committed the offense of arson. Under the circumstances reflected by the record, we think the charge of the court failed to safeguard appellant's rights.

Over appellant's proper objection, the State was permitted to prove that the house was insured in the sum of $1,000. Appellant was not interested in the policy of insurance and there was nothing in the evidence tending to show that he had been

promised any part of the proceeds of said policy. We are of opinion that said testimony was inadmissible.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.